Carl W. LONGMIRE, Plaintiff in Error,

v.

Bette L. LONGMIRE, Defendant in Error.

No. 39356.

Supreme Court of Oklahoma.

Oct. 16, 1962.

Rehearing Denied Nov. 20, 1962.

Hyde & Freeman, A. K. Little, Oklahoma City, for plaintiff in error.

K. D. Bailey, Okmulgee, for defendant in error.

PER CURIAM.

This is an appeal by Carl W. Longmire (defendant below) from that portion of the judgment rendered in a divorce action in favor of Bette L. Longmire (plaintiff below) whereby certain properties and assets were set over and declared to be the property of plaintiff. The lower court also granted to plaintiff a divorce and custody of the parties' three children. Defendant makes no complaint as to this portion of the judgment. The parties will be referred to as they appeared in the trial court.

At the conclusion of an extensive trial, the trial court found that with few exceptions the properties, including real and personal property, were the separate property of plaintiff and should be restored to her. The lower court's conclusion was based on its finding that the properties were either inherited by plaintiff from her mother or were acquired with funds furnished by her mother or with income from plaintiff's inheritance. The trial court set over to defendant his law office books and equipment and the parties' title in a one-half interest in a real property known as 69 Courts, all interest in Flat Rock Oil Corporation, certain oil interests, and an automobile and jeep.

Defendant contends the property granted to plaintiff was not her separate property, but was jointly acquired during coverture, and that no just and reasonable division thereof was made between the parties. Defendant relies on that portion of 12 O.S.1961 § 1278, providing that the property acquired by the parties jointly during their marriage shall be divided between the parties, as may appear just and reasonable. Plaintiff relies upon that part of Sec. 1278, providing that where a divorce is granted by reason of the fault of the husband, the wife shall be restored to all property, lands, tenements, and hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of.

The evidence reflects that the parties were married in 1949 while they were students at the University of Oklahoma and that three children were born during the marriage. The defendant, with financial assistance from plaintiff's stepfather, attended and completed law school in 1952. The stepfather (Mr. Bendeler) died in February, 1952, and left a very substantial estate to his widow (plaintiff's mother), who, until her death in June, 1957, continued to furnish money because of defendant's limited income and plaintiff's tubercular illness, which required plaintiff to reside in a sanitarium for ten months. The home of the parties was bought by the mother with title in the mother's name. At one point in defendant's testimony the defendant categorically admitted he had no real or personal property prior to receipt of money from the estate of plaintiff's mother.

In the interim plaintiff's mother had married a Mr. Graham. At her death in June, 1957, without other issue, she left a will leaving her estate in trust with the First National Bank and Trust Company of Oklahoma City, and providing for a minimum of $200 per month to plaintiff for her support and maintenance, with power to increase in case of need, and residue to go to plaintiff's children upon death of plaintiff. No devise or bequest was made to her husband Graham. This estate was inventoried and appraised at $399,000. The principal asset of the estate was a one-half interest in the working interest in oil leases in Texas which with other assets had been accumulated by Bendeler, deceased's prior husband. Both Graham and the mother of Bendeler claimed

a share of the estate. As a result of the efforts of these parties and of plaintiff, who was· represented by defendant and other attorneys, the will was refused probate on November 19, 1957, on the grounds that it was not properly executed, published and attested. The claims of Graham and Bendeler's mother were satisfied whereby Graham acquired a term interest in production of the Texas property and plaintiff acquired as an heir a present interest in two-thirds of the one-half interest in the Texas oil interests and oil production and the entire interest in practically all other assets of the estate. Plaintiff's share of the net income from the Texas oil interests was initially $15,000 or more per month.

Defendant thereupon undertook the management and investment of plaintiff's funds and in which plaintiff testified she had little control or say and that defendant ignored or overrode any objections she did interpose. Admittedly the scale of living of the parties increased appreciably. One of the chief enterprises was the improvement of "Flat Rock Resort," in which defendant particularly contends he should be granted an interest. This was a 34 -acre area on Fort Gibson Reservoir that was leased in 1956, in an unimproved condition, from the U. S. Corps of Engineers for a term of 20 years. The lease was taken in the name of one Packard, but defendant had some agreement for an interest. According to plaintiff her mother furnished $4000 to buy the lease from Packard and also some funds for improvements, with direction that the lease be transferred to plaintiff. Defendant took title to the lease in his name. More than $140,000 of plaintiff's money was spent on this project. It has not operated at a profit. There is competent testimony that its resale value was $52,600.

A number of real estate properties and oil leases were also bought with plaintiff's funds. We deem it unnecessary to detail these transactions. There is evidence that they were not profitable and have a value substantially less than the amounts invested and to be paid on the mortgages thereon.

Defendant also argues in support of the above general proposition that he substantially increased the value of the Texas mineral interests when he was instrumental in securing assignment to plaintiff from the former partner of Mr. Bendeler of mineral rights in two tracts and their inclusion in the water flood project used to produce oil from the original oil properties inherited by plaintiff. The value of such addition is not shown. Also it appears probable that such addition was in accord with previous operation of the oil properties prior to the death of plaintiff's mother.

■ It is obvious that the trial court, and we think correctly, regarded the determination of the issue as to separate ownership of the property acquired during marriage as dependent upon the original source of all the property. Spencer v. Spencer, 199 Okl. 133, 184 P.2d 761, 762. Admittedly all of the property came to plaintiff by inheritance or was acquired by the money of plaintiff.

■ The trial of the cause was held in July, 1960. It was established that there had been received from the mother's estate in excess of $345,000. This had been spent or used in the various modes and enterprises above mentioned. In addition there was an existing indebtedness of more than $133,-000. The federal government was claiming a surcharge on the estate for taxes for $132,-000 and it was anticipated that an additional claim would be made for income taxes. Under the record in this case the trial court was fully justified in concluding that the property restored to plaintiff was not jointly acquired property within the meaning of 12 O.S.1961 § 1278, supra, and that plaintiff's separate estate was not enhanced by the money or efforts of her husband.

■ Jointly acquired property within the meaning of said statute is that accumulated by the joint industry of the husband and wife during marriage. Bruce v. Bruce, 141 Okl. 160, 285 P. 30. See also Thompson v. Thompson, 70 Okl. 207, 173 P. 1037, 1038; Chamberlain v. Chamberlain, 121 Okl. 145,

247 P. 684, 687; and Howell v. Howell, 42 Okl. 286, 141 P. 412, 414. In the present case the separate funds of plaintiff were only converted into the now involved property.

In Brannon v. Brannon, 207 Okl. 529, 250 P.2d 447, we stated:

"Where an issue in a divorce action is whether the property involved in a division of property is the separate property of one spouse or property that was jointly acquired during coverture, a question of fact is presented, and since the action is one of equitable cognizance the decision of the trial court on that issue will not be disturbed on appeal unless it is found to be against the clear weight of the evidence."

We cannot say that the judgment of the lower court on this phase of the case is against the clear weight of the evidence.

Defendant's complaint regarding the limited amount of assets awarded to him has no merit. It was concluded by the trial judge and reflected by the evidence that defendant's personal contribution of funds was not in excess of $3000. From our examination of the record it is our conclusion that such division of the property, under the facts and circumstances of this case, was not against the clear weight of the evidence. In Turlington v. Turlington, 193 Okl. 421, 144 P.2d 957, we stated:

"An action for divorce and division of property is one of equitable cognizance and the judgment of the trial court in such a case will not on review be disturbed by this court unless it be clearly contrary to the weight of the evidence."

Defendant also contends that the continuous asking of leading questions by counsel for plaintiff was improper and resulted in a miscarriage of justice. Ogletree v. Marcus, Okl., 361 P.2d 689, is cited to support this contention. The case is not in point. That case involved a trial for damages for slander before a jury and the use of leading questions was condemned as giving the jury an improper conception of the merits of the lawsuit. Furthermore it was given as additional grounds for sustaining the lower court's action in granting a new trial. The instant case was a trial to the court and involved transactions as to receipt and investment of money and the source of the funds. We fail to see how the court would be misled. It was largely a matter of discretion on the part of the trial judge in the trial of the matter. Furthermore defendant's counsel made few objections and fail to point out in what way the trial court was misled by leading questions of plaintiff's counsel.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.